UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH SCHOTTENSTEIN, individually, ASHLEY SCHOTTENSTEIN a minor, and ABBY SCHOTTENSTEIN, a minor, by and through their guardian ad litem, SARAH SCHOTTENSTEIN<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN SCHOTTENSTEIN; M/I HOMES. INC; and DOES I through X,        ,<br><br>Defendants<br><br>_____/ | No.<br><br>**COMPLAINT**<br><br>(False Imprisonment, Invasion of Privacy; Damages for Violation of Constitutional Rights to Liberty and Privacy, Damages for Cruel and Unusual Punishment; Intentional Infliction of Emotional Distress; Conversion , Restitution and Accounting; and Petition for Civil Habeas Corpus) |

1. Come now plaintiffs, Sarah Schottenstein, and her sisters, Ashley Schottenstein and Abby Schottenstein, both of whom are minors respectively 17 and 15 years old, by and through their Guardian Ad Litem, Sarah Schottenstein,, and allege as follows:

## COMPLAINT FOR DAMAGES

2. Plaintiffs, through this action, seek to recover damages they have suffered because of being confined by their father, the defendant Steven Schottenstein, away from their mother with whom they have always had the desire and an absolute liberty interest to be with, also damages suffered because

1

of being subject to their father's continuing abuse, domination, control, paranoia, disregard of boundaries, invasions of privacy, and deprivation of liberty.  The minor plaintiffs seek as well to join their sister, Sarah, and their mother, Jill Schottenstein in New York City, far away from their father's dominion in Ohio.

3. Defendant, by dint of immense wealth and political clout, has enlisted sympathetic courts and compliant witnesses to obtain unconstitutional Ohio court orders depriving the plaintiffs in Ohio of their federal constitutional rights to liberty and privacy.  This, he has done for the sole purpose of punishing the plaintiffs' mother for divorcing him as abusive to his family members.

4. Defendant, in waging war against the plaintiffs' mother, has used his corporate aircraft and resources to take Sarah against her will and without her consent to a private school in Connecticut, then to a prison boot camp in Utah, and after that to a mental hospital in Kansas.   Never was Sarah truant, a drug user, an alcoholic, arrested, a lawbreaker, disrespectful, or mentally ill.

5. Instead of being all the things that Defendant falsely accused her of, Sarah was physically ill, with painful mouth lesions, distressful gastric problems, irregular menstrual periods, and a severe weight loss that reduced her 5 foot 6 inch frame to 90 pounds.  Instead of getting medical help for Sarah, Defendant claimed that she was a hypochondriac, whose mother had made her ill by seeking needed medical treatment.  To the contrary, Defendant's abuse coupled with her parents' matrimonial warfare exacerbated Sarah's existing physical health problems.  Even when Jill arranged medical care for Sarah, Defendant repeatedly intervened and by his influence and slanderous remarks about Sarah,

stopped the treatment, thereby jeopardizing her health, safety, and welfare.

6. Sarah was, at all times material, an attractive, intelligent, and dynamic young woman seeking to lead the normal life of a healthy teenager, to pursue her studies, and to be with the people she adored most in the world, her mother and her sisters. The day she reached majority, despite Defendants' threats and intimidation, she walked out of his house, and moved to New York to live with her mother, of whose company she had been deprived by Defendant and his court orders for over two years. In New York, away from the defendant and his influence, Sarah was diagnosed with lupus erythematosus, a serious autoimmune disease. In retaliation, Defendant has refused to help with her college and expenses, has converted substantial assets in Sarah's name to himself, and concealed information about a trust for Sarah established by her grandfather.

## JURISDICTION AND VENUE

7. This court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1).

8. Sarah Schottenstein is a citizen of the State of New York and lives in this judicial district.

9. Steven Schottenstein is a citizen of the State of Ohio and lives in Bexley, Ohio. On information and belief, M/I Homes, Inc. is a citizen of Ohio with its principal place of business in Columbus, Ohio.

10. There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

11. Venue is proper in this district under 28 U.S.C. §§1391(a)(3) and (c).

## PARTIES

12. Plaintiff Sarah Schottenstein is a citizen of the State of New York. She is the daughter of the defendant Steven Schottenstein and the older sister of the minor plaintiffs, Ashley Schottenstein and Abby Schottenstein, and appears individually for herself and as guardian ad litem for her minor sisters.

13. Steven Schottenstein is a citizen of the State of Ohio and the father of each of the plaintiffs. He is the Chief Operating Officer and Vice Chairman of M/I Homes.

14. M/I Homes is the 19th largest single family homebuilder in America with revenues last year of $1 Billion.

15. Doe defendants I through X are persons presently unknown to the plaintiffs who will be added to the complaint when their identity is ascertained.

16. In all things herein alleged and at all times material, all defendants were acting as agents for, or joint adventurers with, the other defendants, and were also acting in furtherance of a conspiracy to commit the acts or suppress the facts herein alleged.

## BACKGROUND

17. Plaintiff Sarah Schottenstein was born February 8, 1986 and is 18 years of age. Plaintiff Ashley Schottenstein was born June 20, 1987 and is 17 years of age. Plaintiff Abby Schottenstein was born November 21, 1988 and is almost 16 years of age. On February 8, 2004, the day she turned 18 years of age, Sarah left the defendant's home and moved to New York City to live with her mother, who has been a resident of New York City since 2002. Ashley and Abby likewise have always, since their parents' separation and divorce, sought to live with their mother. They have been prevented from doing so only

because of unlawful orders the defendant procured not only confining them to his custody, but excluding any contact with their mother.

18. Defendant Steven Schottenstein is Chief Operating Officer and Vice Chairman of M/I Homes, Inc., a family business begun by the previous generation that immigrated from Russia. Due to the enormous success of this enterprise, Defendant has become a notorious and, through generous donations, an influential part of the elite of Columbus, Ohio.

19. Defendant's marriage to Jill Schottenstein ended after 18 years when she left him. Defendant's "must win" business philosophy overtook his life, and his dominating, controlling, and ruthless personality alienated his family. Defendant regarded Jill's rejection and divorce as a personal assault. In retaliation, he decided to make Jill Schottenstein pay where it hurt the most, by depriving her of her daughters.

20. Defendant's powerful influence and scorched earth legal tactics resulted in several contempt orders against Jill Schottenstein and his gaining custody of the three plaintiffs, who were initially muffled by the trial court, but later, when allowed after appeal to express their preference for their mother, saw that preference cavalierly disregarded. When Jill finally obtained divided residential time, Defendant began a vendetta to cast Jill as an abusive parent for seeking medical treatment for Sarah. Finally, Jill was excluded from all contact with her own daughters who desperately wanted to be with her and wanted nothing to do with their father.

21. The reasons for their preference were:

    a. Defendant would sleep with his daughters after their mother

would not longer sleep with him.

b. Defendant respected no boundaries with Sarah, but would barge in upon her without knocking when she was dressing or showering.

c. Defendant would persistently threaten Sarah's friends, open her mail, eavesdrop on her telephone calls, and otherwise display persistent paranoia about what she was doing, where she was going, and whom she was with.

e. Defendant physically hurt Sarah from time to time, and had an explosive temper which he could not control, making Sarah afraid of him, not knowing in advance what slight provocation might trigger a tirade of verbal or physical abuse.

d. In September, 2001, Defendant, by use of M/I Homes' jet aircraft, took Sarah against her will and without her consent to Connecticut to be enrolled at Suffield Academy, where Sarah suffered several health problems.

e. Rather than get help for Sarah, Defendant, against Sarah's will and without her consent, and again by corporate jet, took Sarah to St. George, Utah, where he placed her in Cross Creek Manor, a highly punitive lock-down facility housing serious drug offenders and badly behaving girls. Sarah had never broken any law; and never had any behavioral or drug problems to justify placing her in a private prison in the Utah desert that was part of an organization some of whose other youth prisons had been closed by

authorities.

f. When Jill Schottenstein traced the M/I Homes jet to St. George, Defendant, by ex parte court order, put Sarah in the Menninger mental health hospital in Topeka, Kansas, where Sarah was forced to room with a cocaine addict, saw a young woman attempt suicide, and was coerced into developing a relationship with her father, whom she despised. The Jay Schottenstein family has had, for many years, a relationship with Menninger hospital to which they and their enterprises donated much money as well as to the Jerome Schottenstein Arena, the Max Fisher School of Business at Ohio State University and many other prominent projects. Defendant took Sarah to Menninger by M/I corporate jet against her will and without her consent, notice or hearing. Sarah has never been mentally ill. Jill Schottenstein rescued Sarah from Menninger on November 29, 2002.

22. Defendant's aggression against Sarah in order to punish her beleaguered mother caused Sarah's already delicate health to falter. In December 2001, she was treated seriatim for sinus ailments, nasal congestion, and mouth ulcers, eventually resulting in hospitalization at Columbus Children's Hospital in January, 2002. She was diagnosed as erythema multiformes and epidermal necrosis, possible Stevens Johnson's disease, bursitis and tendinitis, Bechet's inflammatory bowel disease or immunologic connective tissue disorder. Other doctors thought that Sarah might have Crohn's disease.

23. Defendant, always demanding control and putting himself in charge,

7

claimed that Sarah was identified with her mother's plight and concerns to the extent of hypochondriasis. He, therefore, began to interfere with Sarah's treatment by using his power to divert medical examination and investigation into her ailments and cast her as the tool of her mother's manipulation. Sarah, however, continued to suffer and lose weight until she was reduced to 90 pounds and wheelchair bound. Defendant interfered with Sarah's treatment by the physicians at the Cleveland Clinic and elsewhere, so Sarah went to Cincinnati Children's Hospital where she was a patient from June 5 to July 16, 2002, hovering near death. Even before her illnesses described above, Sarah had infrequent menstrual periods followed with uncharacteristic heavy discharges. Defendant, however, refused to allow her to have routine female physical examinations.

     24. After Sarah's move to New York, she received quality health care independent of Defendant's influence and opinions, resulting in a diagnosis of lupus erythematosus, an autoimmune disorder. This was accomplished by her becoming a beneficiary on her mother' health insurance provided by Aetna. In order to prevent Defendant's interference with her health care in New York City, Sarah instructed Aetna in writing to keep her records confidential so that the defendant could not, as he had in Ohio, contact her physicians and interfere with her health care. Aetna disregarded Sarah's confidentiality order, and notified Defendant of Sarah's history. M/I Homes then changed its health insurance from Aetna to another carrier with Sarah listed as a beneficiary. Aetna thereafter refused either to pay Sarah's doctors in New York or to reimburse Jill Schottenstein when she paid for Sarah's care on the absurd implication that

Sarah was double dipping due to another health insurance policy's being in force. Sarah has never used the M/I Homes insurance coverage.

25. Sarah needs money for college and expenses in New York. Sarah sought to access her own funds that should have been available to her as an adult. Defendant, however, removed both cash and stock from Sarah's access and control, leaving her destitute for college tuition and expenses.

26. Plaintiff's mother has depleted her few divorce settlement assets paying medical bills and college expenses, thus limiting her ability to help Sarah further . Defendant has remarried and has two children by his second wife, whose spending is without any apparent limit.

## COUNT ONE

(False Imprisonment)

27. Defendant forced Sarah against her will and without her consent to attend Suffield Academy in Connecticut, forced her to be locked up in a desert prison camp in La Verkin, Utah, forced her to be a patient at Menninger psychiatric hospital in Topeka, Kansas, and forced her onto the M/I Homes corporate jet to be transported to and from these destinations, mostly without her knowing in advance where she was going, why she was going, and for how long she was going. Defendants' confinement of Sarah was not the result of her having broken any law, or being convicted of any public offense, or having been diagnosed as mentally ill, but was solely to cause both mother and daughters anxiety over Sarah's disappearance in furtherance of a litigation tactic to punish Jill Schottenstein and her daughters for leaving Defendant and challenging him in court.

27. Any pretext Defendant had for procuring court orders allowing him to do this was falsely premised, and such orders were obtained ex parte, without notice, hearing, and the right to confront Defendant, and were unconstitutional in violation of the 14th and 8th Amendments to the federal constitution.

28. Defendant's conduct caused Sarah mental and emotional distress, and was malicious, wanton and in reckless disregard of her health, safety and welfare, by reason of which Sarah is entitled to recover compensatory and punitive damages.

WHEREFORE, Sarah Schottenstein prays for damages according to proof.

## COUNT TWO

(Invasion of Privacy)

29. Plaintiffs reallege and incorporate by reference the allegations set out in paragraphs 1 through 28 as if stated in full.

30. Plaintiff Sarah Schottenstein had a zone of privacy that the defendant deliberately and maliciously invaded in the following respects:

a. By disregarding Sarah's boundaries that she had a right, as an individual, to expect and maintain regardless of her minority status.  Defendant violated these boundaries and invaded Sarah's privacy by sleeping with her, by barging unannounced into her bedroom or bathroom when she was changing clothes or showering, and by monitoring her telephone calls and eavesdropping on her conversations with her friends.

b. By refusing to allow Sarah to be let alone to make decisions respecting her health, safety and welfare, instead of interfering with her health care by

contacting her physicians and the courts and claiming that Sarah's deteriorating health was caused by her mother's seeking diagnosis and treatment, and by accusing Sarah of being a hypochondriac; and by denying Sarah her mother's company, care, and comfort; and by forcing Sarah to be confined in horrible places such as the Cross Creek prison compound in the Utah desert and the Menninger mental hospital in a Kansas cornfield where she had no legitimate reason for being.  Defendant further invaded Sarah's privacy by using her as an object to punish her mother, Jill Schottenstein, by taking Sarah away from Jill and then by taunting and tarnishing Jill Schottenstein's reputation as an abusive mother, which was wholly and completely false.

     c. By portraying Sarah Schottenstein in a false light as suicidal, truant in school attendance, in need of behavior modification, as a hypochondriac despite her weight dropping to 90 pounds, as enmeshed with her mother against him, and someone whose feelings of dignity, independence, and privacy did not matter.  To the contrary, Sarah Schottenstein at all times material was a brilliant and accomplished student of independent mind and stout heart whom her father could not terrorize, and who knew that she was being abused by her father solely to punish her mother with whom she wanted to live instead of with her father where she was forced to live.

     31. Defendant's conduct caused Sarah mental and emotional distress, and was malicious, wanton and in reckless disregard of her privacy, by reason of which Sarah is entitled to recover compensatory and punitive damages.

     WHEREFORE, Plaintiff Sarah Schottenstein prays for damages according to proof.

## COUNT THREE

(Violations of Procedural and Substantive Due Process)

32. Plaintiffs reallege and incorporate by reference the allegations set out in paragraphs 1 through 31 as if stated in full.

33. The 14th amendment to the federal constitution prohibits any state from depriving any person of liberty without due process of law.  The State of Ohio, at Defendant's behest, deprived Sarah Schottenstein of her liberty and privacy interests by forcing her to live away from her mother whom she adores, and to be locked up at the Cross Creek prison compound in Utah and the Menninger hospital in Kansas, all decisions made and enforced absent procedural due process of law and in violation of substantive due process of law.  Ohio, at Defendant's behest, also deprived the minor plaintiffs, without procedural and substantive due process of law, of their fundamental liberty and privacy interests to live with their mother and to leave the abode of their father. All orders,  judgments, or findings of the State of Ohio are, to the extent contrary to the plaintiffs' protected liberty and privacy interests, unconstitutional, null and void.

34. Plaintiffs have grievously suffered from being forced to live with their father and being deprived of their mother, with whom, as unequivocally stated to the courts of Ohio from day one, they wanted to live.

35. Defendant's conduct, enforced by the State of Ohio, caused the plaintiffs mental and emotional distress, and was malicious, wanton and in reckless disregard of their constitutionally protected liberty and privacy interests, by reason of which they are entitled to recover compensatory and

punitive damages.  In addition, Ashley and Abby Schottenstein are entitled to this Court's order releasing them to their mother's full, complete, and exclusive custody.

WHEREFORE, Plaintiffs pray for damages and their liberty according to proof.

## COUNT FOUR

(Violation of the Eighth and Fourteenth Amendments to the Federal Constitution)

36. Plaintiffs reallege and incorporate by reference the allegations set out in paragraphs 1 through 35 as if stated in full.

37. The Eighth Amendment of the federal constitution protects a citizen from the infliction by a state of cruel and unusual punishment.  Defendant's enlisting the Ohio courts to lock Sarah Schottenstein up in Utah and Kansas, and to deprive her of Jill Schottenstein's company, comfort and care, without procedural or substantive due process of law inflicted upon Sarah cruel and unusual punishment in violation of the 8th and 14th amendments to the federal constitution.  The minor plaintiffs, having seen Defendant's abusive treatment of Sarah, who was ill, lived in constant fear of the same fate for the slightest infraction.

38. Defendant's conduct, enforced by the State of Ohio, caused the plaintiffs mental and emotional distress, and was malicious, wanton and in reckless disregard of their constitutionally protected liberty and privacy interests, by reason of which they are entitled to recover compensatory and punitive damages.  In addition, Ashley and Abby Schottenstein are entitled to

this Court's order releasing them to their mother's full, complete, and exclusive custody.

WHEREFORE, Plaintiffs pray for damages according to proof.

## COUNT FIVE

(Intentional Infliction of Mental and Emotional Distress))

39. Plaintiffs reallege and incorporate by reference the allegations set out in paragraphs 1 through 38 as if stated in full.

40. Defendant has parental duty to protect, promote and provide for the health, safety, and welfare of the plaintiffs, his daughters. By employing a deliberate and outrageous tactic to punish his wife for leaving him and his daughters for their allegiance with her and not with him, he undertook to punish them all by keeping them apart. By his power to influence Ohio courts and witnesses necessary to this end, he intentionally and cruelly inflicted upon the plaintiffs grievous mental and emotional distress.

41, Defendant's conduct was malicious, wanton and in reckless disregard of Plaintiffs' health, safety, and welfare, by reason of which they are entitled to recover compensatory and punitive damages.

WHEREFORE, Plaintiffs pray for damages according to proof.

## COUNT SIX

(Conversion, Restitution, and Accounting)

42. Plaintiffs reallege and incorporate by reference the allegations set out in paragraphs 1 through 41 as if stated in full.

43. Plaintiff Sarah Schottenstein is the beneficiary of trusts and accounts standing in her name under the Uniform Transfers to Minors Act and other

assets of which she is not fully aware.  She is informed and believes that the defendant has full and complete information about these accounts and control over some of them, and that he has converted some of these funds and sold some of her stock to his own use and benefit instead of to hers.

44. Sarah is in need of these funds for college and expenses in New York City, and seeks by this count the restitution of all funds thus converted and an accounting of all funds and securities in which she did have or now has an interest.

WHEREFORE, Plaintiff Sarah Schottenstein prays for damages and restitution according to proof.

## COUNT SEVEN

(Habeas Corpus)

45. Plaintiffs reallege and incorporate by reference the allegations set out in paragraphs 1 through 44 as if stated in full.

46. Ashley and Abby Schottenstein are confined by Defendant at his home and under his exclusive control.  This confinement is unlawful and unconstitutional inasmuch as they have, repeatedly, clearly, and unequivocally demanded to be released from his custody and control so as to join their mother in New York City.  Defendant has refused their request and ignored their demands.

47. The minor plaintiffs are of an age when their continued enforced custody by the defendant is illegal and unenforceable under the federal constitution, and they have a right to be free to live with their mother, Jill Schottenstein, in New York City, provided by Defendant with sufficient funds

to provide for their education and expenses through age 21.

WHEREFORE, Plaintiffs pray to be produced immediately at their mother's abode in New York City.

## PRAYER FOR RELIEF

1. Compensatory damages according to proof.

2. Punitive damages according to proof.

3. Restitution of all funds and securities converted by Defendant and an accounting of all funds and securities remaining in the name or for the benefit of Sarah Schottenstein.

4. The immediate production of Ashley and Abby Schottenstein at their mother's residence in New York City.

5. Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedures, Plaintiffs, by counsel, hereby demand a trial by jury as to all issues so triable.

July 27, 2004

_____  _____
GEORGE S. LOCKER          THOMAS M. BURTON  (Cal. 035856)
100 Park Avenue           P.O. Box 11056
New York, NY 10016        5820 Stoneridge Mall, #100
(212) 496-0593            Pleasanton, California 94566
                          (925) 484-3233
                          thomasburtonlaw@aol.com

Attornies for Plaintiffs