UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

SARAH SCHOTTENSTEIN,

    Plaintiff,

  - against -

STEVEN SCHOTTENSTEIN; M/I
HOMES, INC.; and DOES I through X,

    Defendants.

------------------------------------------------------X

MEMORANDUM
OPINION & ORDER

04 Civ. 5851 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I. INTRODUCTION

    In a Memorandum Opinion and Order dated March 2, 2005, this Court imposed Rule 11 sanctions on Thomas M. Burton, Esq. ("Burton"), the former counsel to the plaintiff Sarah Schottenstein ("Schottenstein"), in the amount of $21,503.50, payable to the defendant, Steven Schottenstein.[1] Burton now moves for reconsideration of these sanctions.

II. LEGAL STANDARD

    A motion for reconsideration is governed by Local Rule 6.3 and is

---

[1] *See Schottenstein v. Schottenstein*, No. 04 Civ. 5851, 2005 WL 488648 (S.D.N.Y. March 2, 2005). Familiarity with the March 2 Opinion is presumed.

appropriate where a court overlooks "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."[2] Alternatively, a motion for reconsideration may be granted to "correct a clear error or prevent manifest injustice."[3]

Local Rule 6.3 should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[4] A motion for reconsideration "is not a substitute for appeal."[5] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, "to reargue those issues already considered when a party does not like

---

[2] *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (quotation marks and citation omitted). *See also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

[3] *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983).

[4] *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098, 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001).

[5] *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 296 (S.D.N.Y. 2002) (quotation omitted).

the way the original motion was resolved."[6] The purpose of Local Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."[7]

## III. DISCUSSION

Burton points to two factual matters that he believes the Court overlooked. *First*, he insists that his former client, Schottenstein, was the prevailing party in the litigation. Even accepting Burton's theory that Schottenstein's lawsuit was the "catalyst" for her recovering substantial sums of money from her father, the defendant Steven Schottenstein,[8] this point is irrelevant to a Rule 11 analysis. As stated in this Court's March 2nd Opinion, the standard for determining sanctionable conduct is whether it was objectively reasonable for

---

[6] *Houbigant, Inc. v. ACB Mercantile*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).

[7] *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988).

[8] *But see Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001) (holding that under the fee-shifting provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act, the term "prevailing party" does not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct").

the attorney to believe at the time of submitting a pleading that "the claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."[9] The fact that after her claims were dismissed Schottenstein received from her father funds that allowed her to continue her education in New York is simply besides the point.

*Second*, Burton asserts that the defendant's counsel, Barry Wolinetz, misled Schottenstein into voluntarily dismissing her conversion claim. This point, too, is irrelevant. The Court did not deem Schottenstein's conversion claim sanctionable, nor do the circumstances of its dismissal have any bearing on the objective unreasonableness of Burton's asserting claims that were not warranted by existing law or by a nonfrivolous argument for the establishment of new law. Therefore, neither of the factual matters raised by Burton provides a basis for reconsideration.

Burton also asserts that the Court ignored two cases that he believes support Schottenstein's due process claim, which the Court determined was

---

[9] Fed. R. Civ. P. 11(b). *See also Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011-12 (2d Cir. 1986).

sanctionable. The first of these cases, *Campbell v. State Farm Ins.*,[10] was not cited in Burton's brief and in any event has no bearing whatsoever on Schottenstein's Fourteenth Amendment claim against her father.[11] *Campbell* does *not* support the proposition that Schottenstein's father's use of Ohio courts to gain custody of his minor daughters constitutes state action.[12] Burton cited the second case, *Roe v. Wade*,[13] to support the proposition that just as liberty and privacy interests are "sufficient in *Roe* to end life, they should be sufficient in this case to live life in New York instead of Ohio."[14] While it is true that the Court did not explicitly address this argument, because this analogy does not constitute a nonfrivolous

---

[10] 538 U.S. 408 (2003).

[11] *See id.* at 429 (holding that a punitive damage award of $145 million, where compensatory damages amounted to $1 million, violated the due process clause of the Fourteenth Amendment).

[12] Burton repeats in his motion to reconsider his argument that, under *Shelley v. Kramer*, 334 U.S. 1 (1948), the Ohio courts' involvement in the custody determination satisfies the state action requirement. Because this Court has already considered and explicitly rejected Burton's interpretation of *Shelley*, this is not a proper argument to raise on a motion to reconsider. *See Schottenstein*, 2005 WL 488648, at *3; *see also Schiavo ex rel. Schindler v. Schiavo*, No. 05-11556, 2005 WL 648897, at *13 (11th Cir. Mar. 23, 2005) ("Use of the courts by private parties does not constitute an act under color of state law.") (quotation marks and citation omitted).

[13] 410 U.S. 113 (1973).

[14] 1/15/05 Letter of Burton to Court ("Burton Rule 11 Let.") at 2.

argument for the extension of existing law or the establishment of new law, *Roe* does not affect the Court's determination that Schottenstein's due process claim was sanctionable.

With respect to Schottenstein's petition for *habeas corpus* relief on behalf of her two minor sisters, which the Court also determined was sanctionable, Burton vehemently disagrees with the Court's interpretation of two cases cited in the March 2nd Opinion: *Lehman v. Lycoming County Children's Servs. Agency*[15] and *Rumsfeld v. Padilla*.[16] As stated in that Opinion, these cases clearly barred Schottenstein's *habeas* petition, and a reasonable pre-filing investigation would, therefore, have revealed that the petition was not warranted by existing law or by a nonfrivolous argument for the establishment of new law.[17] That Burton disagrees with the Court's interpretation of *Lehman* and *Padilla* is a basis for an appeal, not for reconsideration.[18]

---

[15] 458 U.S. 502, 511 (1982).

[16] 124 S. Ct. 2711 (2004).

[17] *See Schottenstein*, 2005 WL 488648, at *3-4.

[18] Burton also disagrees with the Court's determination that Schottenstein's Eighth Amendment claim against her father was sanctionable. However, because Burton does not point to any factual issue or controlling legal decision that might have altered the result, there is no basis on which to reconsider this determination.

Finally, Burton raises a number of arguments contesting the manner in which the Court applied Rule 11. *First*, Burton contends that the sanctions imposed in this case will chill creative advocacy in the future. In general, it is true that in applying Rule 11 courts must walk a fine line: deterring abusive litigation on the one hand while allowing the growth and development of the law on the other. However, sanctioning Burton for signing Schottenstein's complaint and persisting in asserting the frivolous claims contained therein does not pose a significant risk of stifling the development of new legal theories. Burton's behavior in this regard is sufficiently beyond the pale of reasonable conduct that future litigants, and their attorneys, will not be deterred from advancing arguably meritorious claims and arguments.[19]

*Second*, Burton argues that the Court's sanctions are too harsh. Burton is correct to point out that because the purpose of imposing Rule 11

---

[19] Burton also argues that the Court's application of Rule 11 in this case violates the First Amendment. This contention is without merit. As an officer of the court, Burton has bargained away a portion of his First Amendment rights in exchange for the privilege of practicing law. *Cf. Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1074 (1991) (holding that a lower standard for regulating extrajudicial speech of lawyers is appropriate because of attorneys' "fiduciary responsibility" as officers of the court). Oddly, Burton suggests that his advocacy on behalf of his client should receive no less protection under the First Amendment than does nude dancing. *See* Burton Rule 11 Let. at 19-20. The analogy is apt in one respect: very few would argue that nude dancing or pressing frivolous legal claims is appropriate *in a courtroom*.

sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve that goal.[20] Burton further asserts that the Court failed to consider his ability to pay when determining the amount of sanctions to impose.[21] In fact, Burton never suggested in his original brief opposing sanctions that he was unable to pay even the amount of sanctions originally demanded by the defendant, which was in excess of $69,000.[22] Moreover, in his motion to reconsider, Burton does not represent he is unable to pay the $21,503.50 in sanctions that were in fact imposed. Nevertheless, Burton may submit an affidavit supported by appropriate financial documents that states in detail his inability to pay the sanctions awarded by the Court. The Court will reserve its decision on this ground for

---

[20] *See* Fed R. Civ. P. 11(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.").

[21] *See Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986) ("[G]iven the underlying purpose of sanctions — to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring future violations — it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay."). *Accord Merex A.G. v. Fairchild Weston Sys., Inc.*, No. 85 Civ. 6596, 1996 WL 227826, at *11 (S.D.N.Y. May 3, 1996).

[22] *See* 1/7/05 Letter of David C. Levine, Counsel to Steven Schottenstein, to Court at 2.

reconsideration until Burton has had an opportunity to provide this information.[23]

## IV. CONCLUSION

For the foregoing reasons, Burton's motion for reconsideration is denied in part. The Court reserves its decision on whether to reduce the amount of sanctions imposed based on Burton's ability to pay.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
April 18, 2005

---

[23] Burton must submit this affidavit within two weeks of the date of this Opinion.

## - Appearances -

**Former Attorneys for Plaintiff:**

Thomas M. Burton, Esq.
5820 Stoneridge Mall, Suite 100
Pleasanton, California 94566
(801) 918-1656

George S. Locker, Esq.
100 Park Avenue
New York, New York 10017
(212) 496-0593

**Plaintiff Pro Se:**

Sarah Schottenstein
245 East 58th Street
Apt 27C
New York, New York 10022
(917) 319-4167

**For Defendant Steven Schottenstein:**

David C. Levine, Esq.
Baker & Hostetler, LLP
65 E. State Street, Suite 2100
Columbus, Ohio 43215
(614) 462-4705

**For Defendant M/I Homes Inc.:**

Thomas Edward Riley, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5408